CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 03, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTIAN THOMAS NEALSON, | ) |
|     Plaintiff, | )   Case No. 7:23-cv-00445 |
| | ) |
| v. | ) |
| | )   By: Michael F. Urbanski |
| ASSISTANT WARDEN OWENS, et al., | )   Senior United States District Judge |
|     Defendants. | ) |

## MEMORANDUM OPINION

Christian Thomas Nealson, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against four correctional officials at Keen Mountain Correctional Center (KMCC): Assistant Warden Owens, J. Harrison, M. Pozeg, and Unit Manager Reynolds. Nealson claims that he was exposed to mold at the prison and that the defendants did nothing to remedy the problem. The defendants have moved for summary judgment on the ground that Nealson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons set forth below, the motion for summary judgment, ECF No. 15, is **GRANTED**.

## Background

### I. Summary of Allegations

Nealson was incarcerated at KMCC when he filed this action in July 2023. Compl., ECF No. 1, at 1. He alleges that the vents in his housing unit had not been cleaned for years and that mold was "spreading from the seams of the duct work" and "into the cells." Id. at 4. He further alleges that he is allergic to mold and asthmatic, and that exposure to mold triggers his asthma symptoms and causes him to experience shortness of breath. Id. He claims that he

"notified all the defendants as to the mold on the outside of the ventilation ducts" and that they "refuse[d] to address" the issue. Id.

## II. Evidence Relevant to Exhaustion

### A. Inmate Grievance Procedure

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Harr. Aff., ECF No. 16-1, at ¶ 4. Grievable issues include "[c]onditions of care under the authority of the DOC." OP 866.1 § III(B)(1) (eff. Jan. 1, 2021), Harr Decl. Encl. A, ECF No. 16-1. The grieved issue must affect the inmate personally. Id.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally. If a verbal complaint is not resolved to the inmate's satisfaction, the inmate may submit an informal written complaint to the appropriate department head. OP 866.1 § I(D)(2). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the designated staff member then has 15 days to provide a response. Id. If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4).

Regular grievances generally must be submitted within 30 days from the date of the incident or the discovery of the incident. Id. § III(B)(5). A completed regular grievance must include, among other information, "the date when the incident occurred or was discovered and a detailed explanation of the issue and how it affected [the inmate]." Id. § III(B)(2). The grievance form includes space for an inmate to provide "a detailed explanation of the issue . . . and how [the inmate was] personally affected." Harr Decl. Encl. C, ECF No. 16-1.

2

Following the receipt of a regular grievance, prison officials have two days to accept or reject it. OP 866.1 § I(D)(5). If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." Id. § III(C)(4). If the grievance does not meet the intake criteria, prison officials must return it to the inmate with an explanation for its rejection. Id. § III(C)(5). The grievance form lists several reasons for which a grievance can be rejected at intake, such as for failing to identify how an issue caused harm or loss to an inmate personally or for providing insufficient information. Harr Decl. Encl. C. If an inmate disagrees with an intake decision, the inmate may appeal the decision to the Regional Ombudsman within five days. OP 866.1 § III(C)(6).

When a regular grievance is accepted during the intake process, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. Id. § III(F)(1)–(2). If an inmate is dissatisfied with the determination at Level I, the inmate may appeal the determination to Level II. Id. § (IV)(C). "Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education," and "[f]or most issues, Level II is the final level of review." Harr. Decl. ¶ 10. OP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief and that "[t]he exhaustion requirement is met only when a Regular Grievance has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(A)–(B).

    **B.**    **Applicable Grievance Records**

On January 17, 2023, the grievance department at KMCC received a written complaint from Nealson directed to the Operations Manager. Harr. Decl. Encl. C. Nealson alleged that "the ventilation ducts in the pod and the vents [contained] black mold" that was visible to "anyone and everyone" and that "every inmate and staff" member was exposed to it. Id. He asserted that mold is "toxic" and "causes multiple medical conditions," and that he is "allergic to it." Id. The complaint was assigned to Unit Manager Reynolds, and Reynolds responded to the complaint on January 19, 2023. Id. Reynolds indicated that there was "no mold in the pods" and that staff would "continue to sanitize [and] clean the housing units." Id.

On January 24, 2023, Nealson signed a regular grievance complaining that there was black mold in the vents and ventilation ducts. Id. He asserted that black mold "causes multiple medical conditions and is toxic" and that "every" inmate, correctional officer, and staff member was being exposed to mold. Id. He further asserted that he is "allergic to it" and that he wanted the issue addressed to ensure "the safety and security of the compound." Id. He listed the date of the incident as January 15, 2023. Id.

On January 30, 2023, Harr reviewed the regular grievance and determined that it did not meet the intake criteria. Harr. Decl. ¶ 18. She checked the box indicating that Nealson needed to "identify how the issue caused personal harm or loss to [him], personally." Harr Decl. Encl. C. Although Nealson claimed to be allergic to mold, "he did not describe, for example, any actual medical problems/symptoms that he was experiencing because of the mold." Harr Decl. ¶ 18. Consequently, Harr declined to accept the grievance and returned it to Nealson. Id.

4

Nealson appealed the intake decision to the Regional Ombudsman. Harr Decl. Encl. C. The Regional Ombudsman upheld the decision on February 3, 2023. Id. Although Nealson still had time to resubmit a regular grievance describing how the presence of mold personally affected him, he did not do so. Harr Decl. ¶ 20.

## Standard of Review

The defendants have moved for summary judgment on the basis that Nealson failed to exhaust his administrative remedies prior to filing suit. Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

## Discussion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S.

199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." Jones, 549 U.S. at 218. As a result, "[t]he level of detail necessary in a grievance to comply with the grievance procedure will vary from system to system and claim to claim." Id. A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 83–84.

The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). "Available" means "capable of use for the accomplishment

6

of a purpose, and that which is accessible or may be obtained." Id. at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense, such as when correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

### A. Proper Exhaustion

The court will first address whether the defendants have met their burden of establishing that Nealson failed to exhaust his administrative remedies. As previously explained, the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules," Woodford, 548

7

U.S. at 90. This "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. (internal quotation marks omitted).

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Nealson properly exhausted his claim against the defendants. While Nealson filed a regular grievance complaining about the presence of mold on the ventilation ducts and vents in his housing unit, the grievance was rejected at intake on the basis that he had not provided sufficient information as to how the problem personally affected him. Nealson was specifically advised that he "must identify how the issue caused personal harm or loss to [him], personally." Harr Decl. Encl. C. Although Nealson could have resubmitted the grievance with additional information, it is undisputed that Nealson did not do so. And it is well settled that merely appealing an intake decision "does not constitute valid exhaustion of remedies under OP 866.1." Hailey v. Clary, No. 7:17-cv-00260, 2018 WL 2123623, at *2 (W.D. Va. May 8, 2018); see also Jackson v. Barksdale, No. 7:17-cv-00031, 2017 WL 3446259, at *3 (W.D. Va. Aug. 10, 2017), aff'd, 707 F. App'x 786 (4th Cir. 2018) (explaining that "final intake decisions do not constitute exhaustion of administrative remedies"). "In order to satisfy the exhaustion requirement, an inmate must correct and resubmit the grievance, have it accepted, and then appeal it to the highest available level of review without satisfactory resolution of the issue." Person v. Davis, No. 7:20-cv-00146, 2021 WL 4429194, at *4 (W.D. Va. Sept. 27, 2021).

In response to the defendants' motion for summary judgment, Nealson does not deny that he failed to resubmit the grievance after Harr returned it to him with an explanation for its rejection. Instead, he argues that the grievance adequately explained how the presence of

8

mold personally affected him and that Harr should have accepted it. See Pl.'s Resp. M. Summ. J., ECF No. 19, at 1–2. Under similar circumstances, however, courts have held that an inmate's "belief that he should not have to correct a procedural deficiency does not excuse his obligation to comply with the available process." Thomas v. Parker, 609 F.3d 1114, 1119 (10th Cir. 2010) (internal quotation marks omitted). Here, as in Thomas, Nealson could have resubmitted the grievance with additional information, but he did not to do so. Id. at 1118. Because Nealson had the opportunity to cure the identified deficiency, he "may not successfully argue that he . . . exhausted his administrative remedies by, in essence, failing to employ them." Id. (internal quotation marks omitted). Thus, while Nealson may believe that Harr erred in rejecting his grievance, "that does not mean that he can simply ignore [her] determination and opt out of the grievance procedure." Brewer v. Mullin, 130 F. App'x 264, 265–66 (10th Cir. 2005); see also Hemphill v. Jones, 343 F. App'x 329, 332 (10th Cir. 2009) ("The fact he may have disagreed with the . . . reasons for their rejection of his filings is of no consequence. Because he was given an opportunity to cure the deficiencies and did not do so, he did not properly exhaust his administrative remedies."); Muhammad v. Fleming, No. 7:17-cv-00481, 2024 WL 4270014, at *6 (W.D. Va. Sept. 23, 2024) (emphasizing that "insufficient information is an allowable basis for the rejection of a grievance under VDOC procedures" and that an inmate's mere disagreement with an intake decision was "not enough to overcome the exhaustion requirement").

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Nealson properly exhausted his claim against the defendants and that the defendants have met their burden of proving that he failed to do so.

9

### B. Availability of Administrative Remedies

Nealson alternatively suggests that administrative remedies were unavailable to him because Harr rejected his grievance. See Pl.'s Resp. Mot. Summ. J. 3 (asserting that Harr "personally tried to hinder the grievance procedure" by rejecting his grievance). However, "a grievance process is rendered 'unavailable' under the PLRA only if an inmate is actually prevented from using it." Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021). If "an inmate is able to participate in a grievance process, notwithstanding alleged obstacles, then that process remains 'available' for purposes of the PLRA." Id.

Here, the alleged obstacle—the rejection of Nealson's grievance at intake—did not foreclose further administrative review of his concerns regarding the presence of mold in his housing unit. As previously discussed, Nealson could have resubmitted the grievance with additional information describing how he is personally affected by the presence of mold, including the fact that exposure to mold triggers his asthma symptoms and causes him to experience shortness of breath. While Nealson obviously disagrees with the intake decision, no reasonable factfinder could conclude that Nealson "actually [was] prevented" from properly exhausting his administrative remedies. Moss, 19 F.4th at 623; see also Haywood v. Baylor, 804 F. App'x 401, 403 (7th Cir. 2020) ("Because refiling [the grievance] was available to him, Haywood's failure to exhaust is not excusable."); Obregon v. Napier, No. 4:22-cv-00074, 2023 WL 9327326, at *9 (D. Ariz. Sept. 1, 2023) ("Plaintiff's disagreement with the responses to his grievances does not render the procedure effectively unavailable.").

In sum, there is no evidence from which a reasonable factfinder could conclude that Nealson properly exhausted his administrative remedies or that the applicable grievance

10

procedure was unavailable to him through no fault of his own. Accordingly, the defendants are entitled to summary judgment on the exhaustion defense.

## Conclusion

For the reasons stated, the defendants' motion for summary judgment, ECF No. 15, is **GRANTED**. An appropriate order will be entered.

Entered: January 2, 2025

Mike Urbanski
Senior U.S. District Judge
2025.01.02 19:31:14 -05'00'

Michael F. Urbanski
Senior United States District Judge